GRAY, GUARDIAN, v. McREYNOLDS ET AL., EXR'S.

1. **Contract to Break a Will:** CONSIDERATION: PUBLIC POLICY. A contract made by and between the father and grandfather of an infant legatee, on the one side, and an heir at law of the testator, but not a legatee under the will, on the other side, whereby it was agreed that the heir should resist the probate of the will, and that the father and grandfather should not insist upon the probate, and that the heir, in case the will should be set aside, should pay the infant legatee the amount of his legacy, (the object being to defeat the residuary legatee,) was void for want of consideration, and as being against public policy; and, though the will was set aside, and the infant lost his legacy thereby, yet his guardian could not maintain an action therefor against the estate of the heir who resisted the probate of the will,—he having, in the meantime, died.

*Appeal from Wapello Circuit Court.*

SATURDAY, DECEMBER 13.

THIS is an action by which the plaintiff seeks to recover the sum of $1,000, and interest, upon an alleged oral contract set up in the pleadings. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendants appeal. The facts appear in the opinion.

*Stiles & Beaman* and *W. W. Cory*, for appellant.

*H. B. Hendershott* and *McNett & Tisdale*, for appellee.

ROTHROCK, CH. J.—The facts in the case, about which there is no dispute, are as follows:

J. W. C. McReynolds, of Jefferson county, in this state, died in May, 1870, leaving his wife, but no children, surviving him. He made a will by which he constituted Isaac D. Mowry his executor. He bequeathed to his wife $5,000; to his mother-in-law, Sallie Mowry, $350; to Madison McReynolds, Susan McReynolds and Martha· McReynolds $2,000 each; to John S. Gray, the infant son of his deceased sister,

the sum of $1,000; to Willie McReynolds $300; to his step-mother $50; and the balance of his estate he bequeathed to the Masonic lodge at Abingdon, as a permanent fund to edu-cate the orphan children of master Masons.   There were one or two other bequests made in the will, not necessary to be mentioned here.   This will was made but a short time before the death of the testator.   By the will the principal part of the estate was intended to be bequeathed to his wife, and to his brother and sisters, and to the minor children of his deceased brother and sister, with a small amount to his wife's mother, and the residue was given to the Masonic lodge at Abingdon.   Solomon McReynolds, the father of J. W. C. McReynolds, survived him, and, in the absence of a will, one-half of the estate would have gone to the wife, and the other half to Solomon McReynolds, the father.

In a short time after the death of the testator the will was filed for probate.   The legatee, John S. Gray, was then some three or four years of age.   His mother died within a month after he was born, and his grandfather, J. G. Gray, took charge and control of him, kept him, and, with some assistance from the father of the boy, clothed, sustained and cared for him as his own child.   After the will was filed for probate, Solomon McReynolds made an agreement with the grandfather and father of the infant child that he (McReynolds) would resist the probate of the will, and that they, as the representatives of the child, should not insist on the probate, and that, if it was not probated, he (McReynolds) would pay to the child the amount of the legacy named in the will.

The contract, as stated by John G. Gray in his testimony, was as follows:   Solomon McReynolds "came to my home, and his wife and Martha and J. W. McReynolds came there on, I think, about a week before the court at Fairfield, and asked me if I had got a letter from him.   I told him I had. Said he, 'I want to break Joseph's will.'   Says he, 'I want you to lay still and let me do it.   I want the heirs to have every cent the uncle willed them, but I want to break that

will;' that Mowry wanted to destroy the property or the money, and I want to break that will and get the money out of the Masons' hands; that · was the contract between him and me, that Johnny and the other minor heirs should have the money that the uncle willed them."

Solomon McReynolds appeared and resisted the probate of the will, and the same was set aside, and the application to have the same admitted to probate refused. No one appeared in the proceedings in behalf of the minor, John S. Gray. Solomon McReynolds afterwards died, without paying plaintiff the amount of the legacy, and this action is brought against his estate to recover upon the oral contract above set out.

The defendants demurred to the petition, objected to the evidence of the contract, and moved the court to direct the jury to return a verdict for the defendants, upon the grounds, among others, that the contract, as pleaded and proved, was without consideration, against public policy, and void. They also asked instructions to the jury to the same effect. All of these objections were overruled.

We think that upon these undisputed facts the plaintiff is not entitled to recover, for two good and sufficient reasons:

(1) The contract was without consideration. It may be conceded, for the purposes of the case, that the father and grandfather of the plaintiff had authority, by reason of their relation to the plaintiff, to make a contract which the plaintiff could enforce against Solomon McReynolds. But that is not the question here presented. There must be a consideration moving from some person. The promise in behalf of the minor to "lay still" and allow McReynolds to set aside the will was binding on no one. There was nothing to prevent the minor, and all his friends, guardians and protectors, from doing all they could to uphold the will. If they had done so, Solomon McReynolds could not have claimed, in the probate court, that they had contracted not to do so.

(2) But suppose we were to concede that the failure to

appear in support of the will was a consideration in support of the agreement. It appears to us that the object of the contract was against public policy, as tending to thwart justice. The avowed purpose was to prevent the Masonic lodge from receiving its legacy. It must be remembered that the plaintiff is seeking a recovery upon the contract made for his benefit. He must accept the contract as it was made. He cannot be allowed to divest it of any of its provisions because of his infancy. The evidence shows that the officers of the Masonic lodge were not advised of the contract. They knew nothing about it. Suppose that all of the beneficiaries under a will excepting one should unite in a contract with an heir that they would do nothing to uphold the will, and that the heir, if successful in defeating it, should pay their legacies, and this contract was made to defeat the legacy of the one not entering into the contract. It is very plain that such a contract is void as against public policy, and no recovery can be had thereon by any of the parties to it. The case of *Fulton v. Smith*, 27 Ga., 413, and other cases cited by counsel for appellee, are unlike the case at bar in their facts. They are cases of contracts between heirs and legatees where there was no "laying still" by any one of them. They were fair, open contracts, made to avoid family difficulties, for the purpose of an equitable and just distribution of property.

We think the court should have directed the jury to return a verdict for the defendants, because, upon the undisputed facts, the plaintiff was not entitled to recover.

REVERSED.