[L. A. No. 2799. In Bank.—January 24, 1913.]

EMIL S. GUGOLZ, Respondent, v. C. M. GEHRKENS, Executor of the Last Will and Testament of Marie Gugolz, Deceased, et al., Appellants.

WILL—CONTRACT BETWEEN SOLE HEIR AND EXECUTORS TO DEFEAT PROBATE—ILLEGAL CONSIDERATION—PUBLIC POLICY.—A contract between the executors named in a will and the sole heir of the testator, by which the executors agreed, in consideration of the promise of the heir to bequeath to each of them by her last will a portion of her estate, to actually join with such heir in having the will set aside, regardless of its validity and in violation of the rights of other legatees who received benefits thereunder, to use the office to which they were appointed by the will to accomplish this result, and as executors named in the will to institute a proceeding for its probate and the issuance of letters testamentary to themselves for the sole purpose of enabling the heir to contest the same and to allow such contest to prevail by default on their part, regardless of the merits thereof, is not a mere agreement for the relinquishment of a valid right, or a matter which concerns the parties only, but is a contract opposed to public policy, and is based upon an illegal consideration.

ID.—PARTIES IN PARI DELICTO—AUNT AND NEPHEW.—In the absence of any evidence tending to show the exercise of undue influence by such heir over one of the executors, or that he was ignorant of the law, the mere fact that such heir was his aunt and was *in loco parentis* to him, and that he had barely attained his majority at the time the will was denied probate, does not prevent them from being *in pari delicto* in respect to such contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Mott & Dillon, and Louis W. Myers, for Appellants.

R. L. Horton, for Respondent.

ANGELLOTTI, J.—Plaintiff had judgment, from which and from an order denying their motion for a new trial defendants appeal. The action is one to enforce an alleged oral agreement made in 1881 by which Marie Gugolz, the deceased, agreed to make a will in favor of plaintiff to the extent of one-fourth of all the property that she should die possessed of. She died testate in January, 1907, leaving an estate of the value of about thirty-seven thousand dollars. By her will she bequeathed to various persons other than plaintiff sums aggregating about twenty-two thousand dollars. To plaintiff she left five dollars and no more. The defendants other than the executor of the will are all either legatees thereunder or heirs of the deceased. The trial court found in accord with the allegations of the complaint, and concluded that plaintiff was entitled to a one-fourth interest in the entire estate, subject to administration thereof, and that defendants are constructive trustees of such interest therein for the benefit or use of plaintiff.

Plaintiff was a nephew of the deceased husband of Marie Gugolz, Caspar Gugolz, being the son of a brother of said Caspar Gugolz. He lived with and was maintained and cared for by said Caspar and Marie Gugolz from 1871, when he was about ten years of age, to the time of death of Caspar, which occurred in December, 1881, in Denver, Colorado, where Caspar resided. He continued to live with deceased after the death of Caspar until some time in 1890, when he married, after which he lived in Denver, and deceased lived in Los Angeles, California. He was never legally adopted by either Caspar or Marie. Notwithstanding many allegations and findings as to matters of this character, there is no contention that there is anything alleged or found that would entitle

plaintiff to any relief other than the alleged agreement herein-before referred to, and no such contention could reasonably be made. Plaintiff bases his claim, as he must, solely on such agreement.

The facts relating to the agreement, as alleged in the complaint, were substantially as follows: Caspar died testate, leaving an estate amounting in value to about thirty thousand dollars. By his will he gave to plaintiff a one-fourth interest in all his property and estate. Marie Gugolz informed plaintiff that she was dissatisfied with the terms of said will and would contest it, asked plaintiff not to make any objection to such contest, and promised him that if he made no such objection, she would make a will in his favor, leaving him a one-fourth interest in all of the property that she should die possessed of, and that he would lose nothing by refraining from making such opposition. He, having perfect confidence and trust in said aunt and her promise, consented and agreed. She did contest the will, plaintiff made no opposition to said contest, and the will was set aside and denied probate by the court. "If he had made opposition to the contest . . . , he believes that the same would have been sustained," and he would have opposed it but for her promise. The contest went by default, by reason of his failure to oppose the same. It was alleged that such promise was based upon a good, valid and adequate consideration.

The findings of the trial court show, in addition to the above, the following: By the will of Caspar, a life interest in all his property was given to said Marie Gugolz. Subject to such life interest, plaintiff was given one-fourth of the estate, a brother, Edward, in Switzerland, was given one-fourth, one Adolph Aeppli was given one-fourth, and the six children of Gottlieb Aeppli were given one-fourth. Plaintiff and Adolph Aeppli were by the terms of the will made the executors thereof. At the time of the agreement plaintiff had not quite attained the age of majority, but was of full age on the day when the hearing on the application for probate was had. The findings as to the terms of the agreement and the matter of consideration were in accord with the allegations of the complaint.

The answers of defendants sufficiently deny the allegations of the complaint as to the terms of the agreement and the mat-

ter of a good, valid, and adequate consideration, and the findings on these matters are sufficiently attacked by specifications of insufficiency.

The evidence as to the terms of the agreement in so far as they refer to what plaintiff was to do in consideration of the promised act of Marie Gugolz, shows a very different case from that presented by either complaint or findings, and one, we believe, that presents a materially different legal question. Of course, it is naturally to be expected that there would ordinarily be some difficulty in proving just what an oral agreement made more than twenty-five years before was, where there is no written memorandum of any kind to show the conversation relied upon as stating the terms. But here, in the light of the testimony of the plaintiff himself, who gave the only evidence there was as to terms of the agreement, and the evidence as to what was actually done by him in pursuance of the agreement, there can be no question as to just what, in substance, the agreement was.

On the evening of the day on which Caspar Gugolz was buried, December 29 or 30, 1881, Marie Gugolz, and plaintiff, and Adolph Aeppli, who had come from Chicago for the funeral, were together at the residence of Mrs. Gugolz. They read the will, and Mrs. Gugolz expressed her dissatisfaction therewith. She said to them: "If you agree to make no opposition *and to have this will set aside, you and Adolph,* I will, right after it it is defeated, make my will giving you each your quarter after my death. Emil, you can have your quarter, and Adolph shall have your quarter, and the will will be made in the same division as uncle had it." They both agreed, saying, "Yes, we will help you out, and if you will fulfill your promise and make your will the same as uncle had it, *we will help you out in every shape and form."* The next day they all three went to the office of the lawyer who had drawn the will, and who had acted as one of the subscribing witnesses when it was executed December 18, 1881. This lawyer was told by them that "all three of us agreed together to have it (the will) set aside, and if it can be done to have it done." He told them it would be a "pretty hard matter to do it," but that "of course, with a little scheming . . . it can be accomplished." He directed them to return in a few days. On their return, January 4, 1882, they were taken by the law-

yer before the probate judge, where plaintiff and Adolph
Aeppli signed a petition for the admission to probate of Cas-
par's will and the issuance to them of letters testamentary,
and were sworn as to the truth of the allegations of the peti-
tion by said judge.  A few days later the three went to the
lawyer's office again, and Marie Gugolz signed a written oppo-
sition to the application for probate.  On January 25, 1882,
the three went with the lawyer to court, together with the
lawyer's partner, who acted on the hearing as the attorney
for Marie Gugolz.  The two subscribing witnesses testified,
being questioned only by the attorney appearing for Marie
Gugolz.  The deposition of the attorney who drew the will
shows that the petitioning executors had no attorney on such
hearing, did nothing after filing their petition to sustain the
will, simply remained quiet at such hearing "and kept close
to Mrs. Gugolz," and that "all went the other way by the per-
suasions, promises, and inducements of Mrs. Gugolz."  This
was in no way contradicted.  When the hearing was com-
pleted, the attorney who drew the will, according to the testi-
mony of plaintiff, came over to the three and said to the
executors, "I have defeated that will in favor of your aunt."
The deposition of this lawyer further shows that Caspar Gu-
golz was not mentally incompetent to execute a will, and that
it was not true that the subscribing witnesses did not sub-
scribe their names in the presence of the testator.  Plaintiff
himself testified that he was present at the execution of such
will; that Caspar Gugolz signed the will in the presence of
the subscribing witnesses, and that both subscribing witnesses
attached their signatures at the request and in the presence
of the deceased, and that he stated it was his will.  This un-
contradicted testimony covers all the grounds of the contest
made.  There appears to be no reason to doubt that the will
was in fact valid, and that plaintiff knew it to be valid.  The
record sufficiently shows that none of the other beneficiaries
under the will was in Colorado at the time, or knew anything
about the proceedings.  On January 25, 1882, the alleged will
was denied probate, and, as a result, all of the property of
Caspar Gugolz was subsequently distributed to Marie Gugolz,
as sole heir.

Going back to the language used by plaintiff in his testi-
mony as to the terms of the contract, we see that the propo-

sition made by Marie Gugolz to the two executors was to leave them each one-fourth of her estate if they would agree, not only to make no opposition to her contest, but also "to have this will set aside," and that they in response said that if she would make such a disposition of her property, "we will help you out in every shape and form." This implied not only passive acquiescence in anything she might do in the matter of a contest, but also such active participation on their part, even as executors, as might be essential to bring about the setting aside of the will, and the conduct of the executors thenceforth to the time of the making of the order denying probate of the will clearly shows their understanding that such was the nature of their undertaking. We may concede that the contract as alleged and found cannot be held, in view of the authorities, to be void as against public policy, or to be based upon an illegal consideration. But the contract shown by the evidence is a very different contract from the one alleged and found. The contract shown was one between the executors named in the will on the one hand, and the sole heir of deceased on the other, by which the executors agreed to actually join with such heir in having the will set aside, regardless of its validity and in violation of the rights of the legatees other than themselves, who were entitled under the will to one-half of the estate subject to the life interest of Marie Gugolz, to use the office to which they were appointed by the will to accomplish this result, as executors named in the will to institute a proceeding for its probate and the issuance of letters testamentary to themselves for the sole purpose of enabling the heir to contest the same and to allow such contest to prevail by default on their part, regardless of the merits thereof, all in consideration of the promise on the part of the heir to bequeath to each of them by her last will one-fourth of her estate. This, of course, was, as said by counsel for appellants, not a mere agreement "for relinquishment of a valid right," or "a matter which concerns the parties only." It apears to us that a mere statement of the terms of the real contract is enough to clearly show that the contract is opposed to public policy and is based upon an illegal consideration.

The absence of sound objection on this ground to a contract having for its sole purpose the disposition of property in a

manner different from that proposed by a testator, even where the contract contemplates the rejection of the will when offered for probate, or its setting aside when admitted to probate, when it is entirely free from fraud, and is made by all the parties in interest, may be freely conceded. As has often been substantially said, the public generally has no interest in the matter of the probate of a will, and only those interested in the estate under the will or otherwise are affected by such a contract. If they all agree upon some course to be followed, and their contract is otherwise free from contemplated fraud or violation of any law, no one else has any such interest as warrants complaint. Such was the character of contract involved in *Spangenberg* v. *Spangenberg*, 19 Cal. App. 439, [126 Pac. 379], especially relied on by plaintiff here, where the contract purported to affect only such property of the deceased as should in fact be received by the parties thereto. In *Estate of Garcelon,* 104 Cal. 570, [43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414], another case much relied on by plaintiff, a contract by an heir to refrain from contesting a will was involved. It was said that the contract was one that concerned the parties alone, and one that did not appear to be against public policy. The contract here involved concerned not only the parties thereto, but also all the other legatees under the will of Caspar Gugolz, none of whom, the record sufficiently shows, was present or had any actual notice of what was being done. Such other legatees were all entitled, if the will stood, to receive the amounts given them, subject to the life interest given to Marie Gugolz. This interest given them was free from any power of disposition on the part of said Marie Gugolz. The setting aside of the will involved the absolute destruction of this right conferred on them thereby, and the vesting of the whole of their interest in Marie Gugolz, to do with as she saw fit. The purpose and effect of the contract were to accomplish this very result, to prevent the probate of the will in order to defeat the rights of the legatees thereunder, not, it may be conceded, merely to so deprive such legatees of their rights, but for the purpose of enabling Marie Gugolz to have all of the property, with absolute power of disposition. The only undertaking of Marie Gugolz was to leave such property as she possessed at the time of her death to the legatees named in her hus-

band's will, in the proportions specified therein. In addition
to this, the contract contemplated, and in its execution involved,
not the mere omission of the executors named in the will to
take any step looking to the defense thereof, but their active
co-operation as executors in so presenting the matter to the
court as to bring about the invalidation of the will, regardless
of whether or not there was any legal objection thereto. We
think no case can be found in which such a contract has been
held to be valid. It has been expressly held that an agree-
ment to resist the probate of a will and procure it to be set
aside so as to cut off the interest of one who is not a party
to the agreement is against public policy, it being said that
the object of such a contract was against public policy as tend-
ing to thwart justice. (See *Gray* v. *McReynolds,* 65 Iowa,
461, [54 Am. Rep. 16, 21 N. W. 777].) In *Cochran* v. *Zach-
ery,* 137 Iowa, 585, [126 Am. St. Rep. 307, 15 Ann. Cas. 297,
16 L. R. A. (N. S.) 235, 15 N. W. 486], the heirs of the tes-
tator, who were given a life interest by the will, with remain-
der over to their issue, in order to obtain a fee simple title,
agreed with the person named as executor to pay him two
thousand dollars in lieu of the compensation he would be
entitled to as executor and trustee if the provisions of the
will should be carried out, if he, acting in conjunction with
them, should secure the setting aside of the will of deceased.
The executor did not even petition for the probate of the
will, such petition being presented by the guardian of one of
the heirs. The will was denied probate, on the contest made
thereto. The question of the executor's right to recover the
two thousand dollars agreed to be paid him was presented,
and the contract was held to be against public policy, and re-
covery thereon was denied. It was said that by the contem-
templated adjudication that the will was not valid, the rights
of the issue entitled to the remainder were to be absolutely
defeated, and, citing *Gray* v. *McReynolds,* 65 Iowa, 461, [54
Am. Rep. 16, 21 N. W. 777], that such an agreement to cut
off the interest of one who is not a party is against public
policy. It was further held that the agreement there involved
was against public policy in that it contemplated the violation
by defendant of the trust reposed in him by his father in nam-
ing him as an executor to carry out the provisions of the will,
although he had not assumed any obligation as such, the

court saying that it believed it to be in violation of public policy that he should speculate on the advantages which would accrue to him as executor and trustee, should the will be admitted to probate, and make the relinquishment of those advantages the consideration for an agreement to secure a pecuniary consideration. It was further said that any contract which involves a fraud on the rights of others is against public policy. In *Ridenbaugh* v. *Young*, 145 Mo. 274, [46 S. W. 959], the agreement of one heir to pay another ten thousand dollars if a proceeding for the setting aside of the will of the deceased instituted by the promisor should be successful and the will set aside was involved. The effect of such a conclusion of the proceeding was to cut off the rights of a devisee who was not a party to the agreement. It was said that under the facts appearing, the contract was entered into by two apparent adversary parties without the consent of a codefendant of one of them, and that the participating defendant was to be paid a money consideration by the contestant if he was successful. It was said by the court that the contract showed that it was entered into for the purpose of defrauding the devisee not a party to the agreement, and of imposing upon the court, under the pretense by the promisee that she was acting in concert with her codefendant in resisting the suit to set aside the will, while at the same time she was conniving with the plaintiff to bring about a different result, for all of which she was to receive a consideration. It is to be noted that by the agreement there involved, the contestant agreed with the promisee to transfer to the devisee who was not a party, all his interest in certain lands devised by the will to such devisee, thus making a promise for his benefit, just as in the case at bar Marie Gugolz made such a promise for the benefit of those not parties to the agreement between herself and the executors. What was said by the supreme court of Missouri as to the contract involved in the case referred to, as stated above, is applicable here. The contract here, by the very terms, was a fraud upon the other legatees, and must be held to have been entered into for the purpose of defrauding them. It further must be held to have contemplated an imposition upon the probate court, the inauguration of a proceeding in which the parties appearing were to be apparently adversary, while in fact they were all actively

engaged in seeking the same result, the setting aside of the
will of deceased, as invalid, absolutely without regard to the
merits of the contest. Of the agreement involved in the case
referred to, the supreme court of Missouri said: ''If such
an agreement is not inconsistent with the full and impartial
course of justice, then we are at a loss to know what is. It
was not only a fraud upon one of the parties to the suit, but
it was an imposition on the court, its general tendencies fraud-
ulent and against public policy. No such contract can or
should be enforced; it is at war with honesty of purpose
and the correct and fair administration of justice. In such
circumstances the law will leave the parties where it finds
them.'' It is said in the note to *Cochran* v. *Zachery,* 16 L. R.
A. (N. S.) 237, that where the contract is not made by all
the parties in interest, and the purpose and effect of it are
to prevent or defeat the probate of a will, thereby to defeat
the rights of certain legatees or devisees therein, not parties
thereto, the courts passing upon the question are unanimous
in holding it violative of public policy and void. We have
found no reason to doubt the correctness of this statement.
So far as the obligation of one named as executor in a will
to *oppose* a contest is concerned, the statements in *Estate of
Hite,* 155 Cal. 455, [101 Pac. 448], and *Estate of Higgins,* 158
Cal. 356, [111 Pac. 8], relied upon by learned counsel for
plaintiff, correctly declare the law as it exists in this state.
But there is nothing in either of these cases which counte-
nances the willful use by such person of the rights accruing
from the fact that he is named as executor to carry out the
provisions of the will, for the purpose of overthrowing it and
having it declared null and void. As suggested in a somewhat
similar case, to approve such action would be to approve a
continuance in his trust by an executor, for the very purpose
apparently of better betraying it. (See *Miller's Appeal,*
30 Pa. St. 478; *Wilhelm's Appeal,* 30 Pa. St. 495.) We are
satisfied that such a contract as is shown by the evidence
should be held to be against public policy and based on an
unlawful consideration.

It appears from what we have said that the difference be-
tween the contract shown by the evidence and the contract
found by the trial court is material to such an extent as to
require the conclusion that the findings in regard to the terms

of the contract are not sustained by the evidence. It also appears from what we have said that the finding of the trial court to the effect that the promise of Marie Gugolz to plaintiff was based upon a good, valid, and adequate consideration is not supported by the evidence.

It is earnestly urged that the parties to this agreement were not *in pari delicto,* and that the plaintiff should be allowed to enforce the same in equity, notwithstanding there may be well founded objections thereto on the ground of public policy and illegality of consideration. Of course, the complaint was not drawn upon any such theory. The theory of the complaint was that the contract was in all respects valid, and no attempt was made to allege facts showing that plaintiff was entitled to relief upon any other theory. It was incidentally alleged that plaintiff was then a minor, and that Marie Gugolz was as a mother to him and had a mother's influence over him. But it was alleged that "if he had made opposition to the contest . . . he believes that the same would have been sustained, and . . . that if it had not been for the promise of his said aunt that she would provide for him in the same manner in her will, that he would have opposed the said contest on her part, of the said last will of the said Caspar Gugolz," and "that the said contest went by default on the part of plaintiff, by reason of the said promise made to him by his said aunt." The trial court found, outside of any issue made by the pleadings, that at the date of said promise and agreement said plaintiff was inexperienced and ignorant as to the law, law courts, and court procedure, and in making said promise said plaintiff was controlled and influenced by his said aunt. There is nothing in the evidence contained in the record now before us to indicate on the part of Marie Gugolz, anything in the nature of oppression, duress, threats, undue influence, or the taking advantage of necessities, weaknesses, and the like, as a means of inducing plaintiff to enter into this contract. Apparently what he did was done in all respects freely and voluntarily. He was twenty-one years of age on the day the hearing was had in the Colorado probate court, and so far as appears was fully as conversant with law, law courts, and court procedure as was Marie Gugolz, if not a great deal more so. Eliminating the finding that may be claimed to tend to show undue influence on the part of Marie

Gugolz,—namely, the finding that plaintiff was controlled and influenced by his said aunt, and the further finding as to plaintiff's ignorance of the law, etc., it is manifest that the judgment cannot be sustained upon the theory that the contract, although void as being against public policy and based upon an illegal consideration, may nevertheless be enforced by plaintiff, or that some relief may be granted on account thereof, because he was not *in pari delicto* with Marie Gugolz. The findings, in so far as they are sufficiently sustained by evidence, obviously do not present such a case as may properly be held to be within any exception to the general rule that neither party to such a contract will be granted relief by the courts, and that the law leaves such parties where it finds them. The exceptions to such rule, based on the theory that the parties are not *in pari delicto,* are well stated in a general way in section 942 of Pomeroy's Equity Jurisprudence, third edition. Certainly such findings in the case at bar as are sufficiently sustained by the evidence do not bring this case within any of the exceptions to the general rule.

The fact that certain material findings are not sufficiently sustained by the evidence makes a reversal necessary.

The judgment and order denying a new trial are reversed.

Henshaw, J., Melvin, J., Sloss J., Shaw, J., and Lorigan, J., concurred.