WILLIAM A. BRANDENBURGER, Appellant, v. MATHILDA A. PULLER et al.

Division Two, January 6, 1916.

1. **PUBLIC POLICY: Settlement of Litigation.** Absent fraud in its various forms, or unlawful or insufficient consideration, settlements tending to avoid litigation and family discord are not contrary to public policy, whether made by all or only a part of those concerned.

2. ————: ————: **Consideration.** An agreement of a person legally in a position to contest a will, to refrain from opposing its establishment, in consideration that a definite sum of money be paid to him by the residuary legatee, is supported by mutual considerations.

3. ————: ————: **Will Contest.** Testatrix gave the great bulk of her property to a residuary legatee who was not an heir at law. Five legatees who were heirs and one heir who was not a legatee, together with the marital consorts of two of them, instituted a will contest in the circuit court against said residuary legatee, her husband and thirty-two other persons. Before the action had been tried the eight plaintiffs, and six defendants, some of whom were heirs at law but not legatees, as parties of the first part, entered into an agreement with the said residuary legatee and her husband by which said first parties affirmed said will as the last and lawful will of

the testatrix and agreed that it might be taken and proven
as such without further objection, and that upon the payment
to them of $9,500, their interest in said estate, whether as heirs
or legatees, should vest in said residuary legatee. Of this
amount $1500 was to be applied to the payment of attorney's
fees and costs which had accrued in the suit, and the balance
was to go in equal shares of $1000 each to the eight persons
directly interested. Thereafter the parties of the first part
appeared in open court, announced their desire to discontinue
the action, and fully informed the court of the terms and pur-
pose of the compromise agreement. Thereupon, another de-
fendant, who was an heir and legatee, but not a party to the
compromise agreement, was permitted, by order of court, to
plead as a party plaintiff, and to continue the prosecution of
the action, which she did as sole plaintiff, and the trial re-
sulted in a judgment sustaining the will. *Held*, that the com-
promise agreement was not contrary to public policy, was sup-
ported by a valid consideration, was free from fraud, and is
binding on the residuary legatee.

Appeal from St. Louis City Circuit Court.—*Hon.
Wilson A. Taylor*, Judge.

REVERSED AND REMANDED.

*Wagner & Miller* and *Henry S. Caulfield* for ap-
pellant.

(1) The agreement is based upon a valid con-
sideration sufficient to support the promises of the de-
fendants. Grochowski v. Grochowski, 15 Am. & Eng.
Ann. Cas. 300, 13 L. R. A. (N. S.) 454 and case note;
Waller's Admx. v. Marks, 100 Ky. 541; Ruth v. Krone,
10 Cal. App. 770; Palmer v. North, 35 Barb. 282;
Hartle v. Stahl, 27 Md. 157; St. Marks Church v.
Teed, 120 N. Y. 585; Clark v. Lyons, 38 Misc. (N.
Y.) 516; Gaither v. Bland, 7 Ky. L. R. 518. (2) Such
agreements are not opposed to public policy. On the
contrary, public policy favors them because they pre-
serve the harmony of the family and prevent disputes
and litigation. It concerns the State that an end
should be put to litigation. Cases supra and Andrews
v. Linebaugh, 260 Mo. 650; Moss v. Cohen, 158 N. Y.

240; Barrett v. Carden, 65 Vt. 430; Schoonmaker v. Gray, 208 N. Y. 209; Leach v. Fobes, 11 Gray, 506; Stringfellow v. Early, 15 Tex. Civ. App. 597; Baughey v. Minor, 1 Prob. L. R. 181 (Eng.); Page on Contracts, sec. 341. (3) It is immaterial that all the defendants to the will contest suit were not parties to the agreement. Moss v. Cohen, 158 N. Y. 240; Hambleton v. Yocum, 108 Pa. St. 304; Schoonmaker v. Gray, 208 N. Y. 209; Ruth v. Krone, 10 Cal. App. 770; Todd v. Todd, 159 Ill. 408; Waller's Admx. v. Marks, 100 Ky. 541; Hogan v. Hinchey, 195 Mo. 527; Andrew v. Linebaugh, 260 Mo. 650; Gay v. Sanders, 101 Ga. 601. (4) Courts will not declare contracts void on grounds of public policy except in cases free from doubt, and prejudice to the public interest must clearly appear before a court is justified in pronouncing an agreement void on this account. Barret v. Carden, 65 Vt. 430; Richmond v. Railroad Co., 26 Iowa, 191; Melloyne v. Larkin, 3 Penn. 123, 56 Am. Dec. 164; Richardson v. Mellish, 2 Bing. 229, 9 Eng. Com. L. 557.

*Schnurmacher & Rassieur* for respondents.

Although family settlements, joined in by all parties in interest, are favored by the law, because tending to avoid litigation, yet an agreement by only a part of those concerned, not to press a will contest, is against public policy, because it has a tendency to interfere with the ordinary course of justice, and will not be upheld. Ridenbaugh v. Young, 145 Mo. 274; Porter v. Jones, 52 Mo. 399; Gray v. McReynolds, 65 Iowa, 461; Cochran v. Zachery, 137 Iowa, 785; 15 Am. & Eng. Ency. Law (2 Ed.), p. 977.

REVELLE, J.—A general demurrer to plaintiff's second amended petition having been sustained, plaintiff declined to plead further and final judgment was thereupon entered for defendants.

The petition alleges, in substance, the following:

Mathilda A. Largue died leaving a will, which was admitted to probate in the probate court of the city of St. Louis on October 16, 1909. Numerous legatees and their legacies were designated in the will, and the residue, being the major portion of the estate, was given to the defendant Mathilda A. Puller. Her husband and co-defendant, Edward S. Puller, was appointed one of the executors. By the 12th clause of the will it was expressly provided that the legacy of any person contesting the will should be revoked.

On December 2, 1909, a suit, contesting the will, was instituted in the circuit court of the city of St. Louis by eight plaintiffs, five of whom were grand-nieces, legatees and heirs at law of the testatrix, and one of whom was a grand-nephew and heir at law, but not a legatee; and two of whom were a wife and husband, respectively, of two of the other plaintiffs. There were thirty-four defendants, of whom two were executors; four were heirs at law, but not legatees; fourteen were legatees, as well as heirs; three, including the defendant Mathilda A. Puller, were legatees, but not heirs at law; and eleven were joined merely as husbands or wives of heirs at law who were parties defendant.

On March 9, 1910, and before the cause had been tried, an agreement in writing was entered into making a compromise and settlement between certain parties upon an agreed basis. The fourteen first parties to this agreement consisted of and included all of the eight plaintiffs in the suit, and six of the defendants therein, some of whom were heirs at law, but not legatees. The second party to the agreement was the residuary devisee and legatee, Mathilda A. Puller, a defendant in the suit therein and herein, and to whom was devised the larger part of the estate. An agreement guaranteeing her fulfillment and performance of

this contract was executed by her husband and co-defendant Edward S. Puller.

By this agrement, and in consideration of the covenants of Mathilda A. Puller, and of the guaranty of Edward S. Puller, all of the parties of the first part affirmed said will as the last and lawful will of the testatrix and admitted and agreed that it was and might be proven and taken as such without further objection on their part, and agreed that upon the payment of the sum of $9500 to them their interest in said estate, whether as heirs or legatees, should vest in said Mathilda A. Puller. Of the $9500 thus stipulated, $1500 was to be applied to the payment of attorneys' fees and costs which had accrued in the suit, and the balance of $8000 was to be paid in equal shares of $1000 to each of the eight parties directly interested. It is further alleged that all of the parties to this agreement were of lawful age and legally capable of contracting. This sum of $9500 was to be paid to plaintiff for himself and as trustee for his beneficiaries whenever the second party received from the estate an amount equal thereto.

It is further alleged that the parties of the first part fully performed the agreement on their part and made no further contest of the will and no further efforts to prosecute the suit; that they appeared by their attorney in open court and announced their desire to discontinue its prosecution and fully informed the court of the terms and purpose of the compromise agreement. Thereafter, Sadie Ferree, an heir and legatee and one of the defendants in the suit, but not a party to the compromise agreement, was permitted, by order of court, to plead as a party plaintiff, and to continue the prosecution of the action. She filed her petition as *sole* party plaintiff, and, as such, prosecuted the suit in the circuit court, where a judgment

sustaining the will was rendered. She afterwards took an appeal, but this she dismissed, and the will then became finally established. None of the parties to the agreement rendered voluntary aid or assistance to her in the prosecution of this action, but some of them, after being duly subpoenaed, testified at the trial concerning facts within their knowledge.

The petition alleges as a breach of contract by the defendants, that, although on July 8, 1911, there was turned over and paid to Mathilda A. Puller, by way of partial distribution of her residuary legacy, assets of the estate to the actual cash value of $75,000, the defendants herein have failed and refused, and still fail and refuse, to pay, or cause to be paid, any part of the $9500.

The demurrer to the petition was general, and was sustained upon the theory that the contract sued upon was, under the circumstances stated in the petition, void, as being against public policy.

## OPINIONS.

This case hinges upon a single proposition. Respondents concede that settlements tending to avoid litigation and family discord, when joined in by *all* parties in interest, are favored by the law, and on this there can scarcely be any difference of opinion.

Public Policy: Settlement of Litigation.

Family dissensions, like small streams, gather as they run, and when we consider their usual result we feel that it is sound public policy to encourage their allayment. Respondents urge, however, that the question of good or bad public policy depends upon whether the settlement was made by agreement of *all* or a *part* of those concerned, and if by only a *part,* then it is contrary to public policy, in that it tends to interfere with the ordinary course and administration of justice. Absent, in its various forms, the element of fraud, or

unlawful or insufficient consideration, this distinction is not sound and is without justification.

The case of Ridenbaugh v. Young, 145 Mo. 274, relied upon principally by respondent, announces no contrary doctrine. In that .case a suit had been brought to annul the will of plaintiff's deceased father. Plaintiff's sister and nephew, both devisees under the will, were made defendants. The plaintiff and his defendant sister, without the nephew's knowledge, agreed that plaintiff should prosecute the suit, and if he succeeded in having the will set aside he would pay his sister a certain sum; and, in consideration of this, she agreed to pay all costs and attorney's fees in the will contest suit. The crucial of that decision ·is thus expressed by its writer: "From reading this contract there is no escape from the conclusion that it was entered into for the purpose of defrauding George Young Ridenbaugh, and of imposing upon the court, under the pretense by Mary T. Ridenbaugh that she was acting in concert with her co-defendant, George Young Ridenbaugh, in resisting the suit to set aside the will, while at the same time she was conniving with her brother to bring about a different result, and had entered into a contract with him by which she was to pay the costs and lawyers' fees in the prosecution of the suit, and to receive from him in return therefor the sum of $10,000 if the will was set aside. . . . It was not only a fraud upon one of the parties to a suit, but was an imposition on the court." To the doctrine thus announced we give our hearty concurrence, because a fraud of that caste should vitiate any agreement.

The case of Gray v. McReynolds, 65 Iowa, 461, was decided upon the same theory of actual fraud and wrongful intention.

The case of Porter v. Jones, 52 Mo. 399, was determined upon grounds of public fraud—the traffick-

ing in appointments of administrators, and the corrupt procuring of an appointment to an office of trust.

This is a substantial epitome of respondents' authorities, and, as seen, they do not sustain their contention. Ordinarily, a party has the legal right, at any time, to dismiss his suit upon such terms, and under such conditions, as he sees fit, and, under the authorities, it cannot be doubted that the agreement of a person, legally in a position to contest a will, to refrain from opposing its establishment is a sufficient consideration to support a promise to pay. By such forbearance the proponents of the will gain its establishment, insofar as the threatened contestant is concerned, and he, in turn, surrenders the power secured to him by law to protect rights which he believes exist, and which he otherwise might have legally established. We know of no rule of public policy which requires a person to contest his ancestor's sanity, or to continue a costly suit to the depletion of his own funds and those of the estate after his own rights have been conceded and secured. It is true that in this State it has been held a contestant cannot dismiss his suit in a will contest until due proof of the execution of the will has been made (Hogan v. Hinchey, 195 Mo. 527), but this does not preclude the parties, in the absence of fraud, even though some are exacting and dissatisfied, from agreeing upon the proof or conceding its sufficiency, and thus avoiding the expense and trouble of litigation. The primary purpose of this law is not to encourage litigation, but to prevent fraud in the establishment and probate of wills. Such a ruling, if bearing it has upon this subject, only tends to emphasize the right of one contestant to compromise and settle his own claims. This ruling prevents only and both the institution of contest suits within the statutory period by one person and his compromise thereof to the detriment and injustice of others who have re-

frained from filing suits because of the one instituted and the establishment of wills without due proof thereof. As was done in this case, any defendant, or co-plaintiff, who is not satisfied with the adjustment made by any one or more of the plaintiffs and defendants, can continue the prosecution of the suit and thereby prevent any prejudice to his rights.

In the case at hand there is no intimation of fraud or wrongful intention. Insofar as the allegations of the petition here go, the plaintiffs, in good faith, entered into an agreement which protected their rights and ended litigation. Its tendency was to promote family peace and harmony and avoid trouble and expense. There was no fraud perpetrated upon the court, as the terms and purpose of the compromise agreement were made known to the court. It is also evident that all parties to the action, both plaintiffs and defendants, were aware of the terms and purpose of the agreement, since the record discloses that upon its announcement in open court one of the parties defendant was made a party plaintiff, and continued to prosecute the action. No fraud was contemplated and none resulted; all interested parties were in court and had opportunity to object to the settlement if they saw fit. Other defendants cannot complain that their antagonists did not further pursue them, especially when, by their own actions, they invited a cessation of hostilities. Agreements similar to this have been quite uniformly upheld. [Grochowski v. Grochowski, 77 Neb. 506, 15 Am. & Eng. Ann. Cas. 300; 13 L. R. A. (N. S.) 484, and cases cited; Andrew v. Linebaugh, 260 Mo. 623; Barrett v. Carden, 65 Vt. 431; Waller's Admx. v. Marks, 100 Ky. 541; Moss v. Cohen, 158 N. Y. 240; Schoonmaker v. Gray, 208 N. Y. 209; Todd v. Todd, 159 Ill. 408.]

It is our opinion that the agreement sued upon was not contrary, but on the other hand conducive, to

public policy, and that the trial court erred in holding to the contrary. The judgment is therefore reversed and the cause remanded, to be proceeded with in accordance with the views herein expressed. *Faris, P. J.,* and *Walker, J.,* concur.