TAYLOR ET AL., APPELLEES, *v.* CONNELL ET AL., APPELLEES; HIGHLAND COUNTY CHILD WELFARE BD. ET AL., APPELLANTS.

(No. 207—Decided June 3, 1971.)

*Mr. Frederick J. Buckley, Mr. David N. McBride, Mr. Thomas A. Zins, Mr. James D. Hapner, Mr. John Sausser, Mr. Rankin M. Gibson,* and *Mr. Lawrence A. Ramey,* for plaintiff-appellees and defendant-appellees.

*Mr. John O. Crouse,* prosecuting attorney, for defendant-appellants.

GRAY, J. This case is in this court on appeal from a judgment upon a directed verdict against the will of Fannie Polk, deceased. Two of the beneficiaries under the will of decedent feeling aggrieved at the outcome of the trial filed their notices of appeal and assigned the following errors:

"I. The court erred in removing the consideration of this case from the jury to effect the inequitable agreement between the contestants and the principal beneficiaries, which agreement and action of the court is contrary to public policy.

"II. As a matter of law, the court has no authority to direct a verdict against the proponents of the will once

the probate of the will has been admitted into evidence."

From the record, it appears that Lois M. Taylor, William A. Polk, Martha P. Wilhite, plaintiffs, and Helen Vara, defendant, were the only heirs at law of testatrix. They were not mentioned in the will and according to interrogatories and answers thereto had seen their aunt once in their lifetimes. Defendant Glenn Connell was named the executor of the will. The Probate Court of Highland County refused to appoint him executor. Defendant Wayne Connell is the minor son of Glenn Connell.

After a provision for the payment of debts, testatrix bequeathed the sum of $30,000 to the Highland County Child Welfare Department, the sum of $20,000 to the Highland District Hospital, the sum of $2,000 to the Careytown Auburn Methodist Church and the sum of $2,000 to Wayne Connell. All of the residue of the estate was left to Glenn Connell. The estate was a very large one.

After the case had proceeded for a day and a half, some of the attorneys approached the bench and one stated that they had reached an agreement and would like to dictate the agreement into the record in the absence of the jury.

The court must have been privy to what was transpiring as the record shows that it made the following statement:

"The Court: At this time, we're going to have a short recess, members of the jury, and you will understand more about what we're doing pretty soon, but for the present we're going to have another recess. You may sit still or you may move around if you want, please don't discuss the case with anyone."

The terms of the settlement were revealed to be as follows: The four heirs of the decedent were to receive $150,000, and Glenn Connell was to receive the remainder of the property.

The court then directed a verdict against the will. The court, in explaining the procedure just taken, stated to the jury:

"* * * and in fact an agreement was effected between

the parties and so what we have just done is a procedural method of protecting that agreement * * *."

Some witnesses had been called for the contestants. A number of other witnesses had been subpoenaed, but had not testified and of course no witnesses for the proponents had been called to testify.

An opportunity was given the attorney for the three charities, the child welfare department, the hospital and the Methodist church and the attorney for Wayne Connell, who was the same as the one for Glenn Connell, to produce evidence in favor of the will. The attorney for the charities, in his brief, claims he was taken by surprise by the sudden turn of events. He further states that he knew a compromise agreement was in the offing and he expected that his clients would be included. He states that he was excluded from the court's chambers when the details were ironed out. As a result, the estate was divided between the four heirs at law and Glenn Connell.

We believe that the first assignment of error is well taken. There is a paucity of Ohio law on this point and there are also relatively few cases in the various jurisdictions of the United States dealing with this precise factual pattern.

We are of the opinion that trial courts have been given authority to direct verdicts against wills on the weight of the evidence, if the state of the record so warrants. We are also of the opinion that a trial court is not authorized to direct a verdict when it is principally motivated in doing so by a desire to carry out a compromise agreement between the heirs at law of a testatrix on the one hand and the principal beneficiary under the will on the other, when all of the parties in the case are not parties to the compromise agreement.

It is significant that no party to the suit made a motion that the court direct a verdict against the will.

The attorneys for the contestants and the attorney for the principal beneficiary by agreement made a new will for the testatrix. This new will was approved by the trial court. The three charities and a minor beneficiary were

excluded from the negotiations and were eliminated as beneficiaries under the probated will.

We are of the view that the Supreme Court in *Madden* v. *Shallenberger,* 121 Ohio St. 401, expressed the philosophy which decides this case. In that case, the parties were attempting to accelerate the time of their enjoyment of the income from their several trust estates. The court, at pages 408-9, said:

"The grandchildren have no interest in the estate of the testatrix except such as has been conferred upon them by the will, and are therefore powerless to add to the aggregates of their estates anything which the testatrix has not conferred upon them; and the heirs at law are powerless to confer any additional title upon them without first securing such additional title in themselves. When, therefore, these heirs at law and beneficiaries under the will sat in conference, and, by the process of trading their several interests in the estate among themselves, emerged from such conference with a greater estate in the aggregate than was bestowed upon all of them by the will, they, metaphorically speaking, lifted themselves by their own boot straps. They gave to themselves that which the testatrix specifically withheld from them, and which by reason of the will had not been cast upon any of them by the law of descent. They were not content with releasing to each other a part of that which was theirs, but they gave to each other that which was no part of any of their portions."

The charities and Wayne Connell, having a less interest under the will than Glenn Connell, might well have depended upon him to present and support the will and, if that support were secretly withdrawn and the will thereby defeated, the result would be loss and injustice to them.

The law in this respect seems to be well settled.

Though in some jurisdictions an agreement to dispense with the probate of a will has been declared to be against public policy and void, in a majority of the decisions on the point, it has been held that all the persons interested in a decedent's estate may by agreement divide

the estate among themselves, without probating such decedent's will or administering the estate, and the validity of a contract having for its sole purpose the disposition of property in a manner different from that proposed by a testator, even where the contract contemplates the rejection of the will when offered for probate or its setting aside when admitted to probate, when it is entirely free from fraud, and is made by all the parties in interest, would seem to be freely conceded.

The propriety of the rule that contracts to suppress valid wills are themselves valid is, at best, very doubtful. A devisee has power to renounce a devise, or to dispose of property which has been given to him by will. If two legatees agree upon any division of their legacies between themselves, another legatee can not be heard to object. At the same time, a competent testator has power to dispose of his property by will. The objection to these contracts is that they do not purport to be contracts by a devisee renouncing or transferring all or part of his devise under a valid will, but they provide for a collusive decree which declares that the will is invalid.

Where the agreement to suppress a will is by less than all of the persons interested, the courts seem to be practically unanimous in holding the agreement void, against public policy as tending to thwart justice, and as a fraud upon the beneficiaries excluded from the agreement. *Cochran* v. *Zachery,* 137 Iowa, 585, 115 N. W. 486, 16 L. R. A. (N. S.) 235, 126 Am. St. Rep. 307, 15 Ann. Cas. 297; *Gugolz* v. *Gehrkens,* 164 Cal. 596, 130 P. 8, 43 L. R. A. (N. S.) 575; *Mercier* v. *Mercier,* 50 Ga. 546, 15 Am. Rep. 694; *Ridenbaugh* v. *Young,* 145 Mo. 274, 46 S. W. 959; *In re* Will of Rice, 150 Wis. 401, 136 N. W. 956, 137 N. W. 778.

We think no case can be found in which such a contract has been held to be valid. It has been expressly held that an agreement to resist the probate of a will, and procure it to be set aside so as to cut off the interest of one who is not a party to the agreement is against public policy and tends to thwart justice. See *Gray* v. *McReynolds,* 65 Iowa, 461, 21 N. W. 777, 54 Am. Rep. 16.

For the reasons above stated, we are of the opinion that prejudicial error occurred in the trial of this cause in the manner set forth above and, hence, this cause is hereby remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

ABELE, P. J., concurs.

STEPHENSON, J., dissenting. I am unable to accede to the reasoning of my colleagues in this case, and, while doing so with no great enthusiasm, I have concluded that no error prejudicial to appellants intervened below. I therefore respectfully dissent from the judgment of reversal herein.

The following facts, which are in the main supplemental to those set forth in the majority opinion, are necessary for a consideration of this appeal.

The appellants herein, The Highland County Child Welfare Board and The Highland County Joint Township District Hospital, were represented by the prosecuting attorney who had filed answers on their behalf. The record reflects that the following sequence of events occurred. After the jury was selected and counsel for the plaintiffs (i. e. the contestants) and counsel for the beneficiaries, other than appellants, had made their opening statements, the following is reflected in the bill of exceptions:

"The Court: Gentlemen, would you approach the bench please.

"Thereupon: Mr. Buckley, Mr Hapner, Mr. Gibson and John Crouse approached the bench.

"The Court: The Prosecuting Attorney wishes to know if there is any objections to him merely noting the fact in the record that he is appearing as of record, he does not intend to appear to participate, as I understand.

"Mr. Buckley: No objection.

"Mr. Rankin Gibson: Right.

"Mr. Crouse: Thank you, Your Honor.

"The Court: Now as I understand it, the proponents are to go forward.

"Mr. Hapner: Right.

"Whereupon: The Discussion at the bench ended and Mr. Crouse then left the courtroom."

The proponents of the will introduced the will and the order of admission to probate and rested. The contestants, then, presented nine witnesses, the testimony of eight of the witnesses bearing upon the lack of mental capacity of the testatrix. Prior to the contestants resting their case, counsel approached the bench and indicated a settlement had been reached. Counsel and the trial judge recessed to chambers and the agreement in question was stated into the record. Counsel for all the parties, except the appellants, are set forth as being in the chambers. The record does not reflect any exclusion of appellant's counsel.

The record at the conference reflects that the parties were of the view that the court should direct a verdict and that counsel for proponent stated:

"* * * and we as Defendants will not contest the will contest any further, that is we will offer no evidence when they rest, and under those circumstances I think upon the basis of the testimony the Court would have to direct a verdict overturning the will."

The trial court, still in the conference, stated he found the settlement equitable and approved the same. Upon again convening court, the plaintiffs rested. Counsel for the defendants, then, stated they had no evidence to offer, whereupon the court directed a verdict in favor of contestants. The record then reflects the following:

"Mr. Sausser: I would like to have the record show that the Prosecutor has been called and that he indicated that he did not wish to put on any evidence.

"The Court: That is very well taken."

The journal entry of judgment not only found that the will in question was not the last will and testament of testatrix, but further set forth the agreement and court approval of the same.

Appellant assigned the following errors:

I. The Court erred in removing the consideration of this case from the jury to effect the inequitable agreement between the contestants and the principal beneficiaries, which agreement and action of the Court is contrary to public policy.

II. As a matter of law, the Court has no authority to direct a verdict against the proponents of the will once the probate of the will has been admitted into evidence.

I consider the latter claim of error first. In *Skelly* v. *Graybill,* 109 Ohio App. 277, the same issue was raised and the court, in holding the direction of a verdict against a will proper, concluded, at 286:

"As to proposition number four, the appellee contends that the trial was irregular because the court did not charge the jury but directed a verdict. This contention is not tenable and not an open question in Ohio. We have heretofore cited the case of *Wagner* v. *Ziegler, supra* (44 Ohio St. 59). All the authorities now are that a will contest case is a civil action and the trial is governed by the usual rules of such cases including the right of the trial court to direct a verdict for or against the sustaining of a will in proper cases. See *Westfall* v. *Notman,* 53 Ohio App., 314, 4 N. E. (2d), 932, the third paragraph of syllabus; *Cummings* v. *Nichols,* 53 Ohio App., 520, 5 N. E. (2d), 923, the third paragraph of the syllabus, and comments at page 525. See, also, *Truchess* v. *Brand, Exr.,* 98 Ohio App., 118, 128 N. E. (2d), 157."

See also *Carr* v. *Howard,* 17 Ohio App. 2d 233, and *Sears* v. *Sears,* 77 Ohio St. 104.

It should be observed that the error claimed is that the trial court was without authority, as a matter of procedural law, to direct a verdict. It is not claimed that the state of the evidence, herein, failed to satisfy the reasonable mind test of *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St. 469. In my view, confining the matter strictly to the evidence before the court, there can be no question that the direction of the verdict was proper.

A more difficult question is presented by the first assignment of error, and is made so, in part, by statements

of the trial court that the verdict was directed as a "procedural method of protecting that agreement." Under this assignment of error, it is claimed this case was removed from the jury for the purpose of effecting the agreement and that the "agreement and action of the court is contrary to public policy."

In Ohio, a will contest once properly instituted may only be terminated (1) pursuant to R. C. 2741.01 by an entry of dismissal approved by all the parties to the action or by their counsel, or (2) by a verdict in a jury trial. While the courts in some jurisdictions have statutory authority to compromise will contests and to enforce the agreement, Ohio courts do not. See 42 A. L. R. 2d 1372.

An examination of the record reveals that the procedural requirements under Ohio statutes with respect to will contests have been observed and the controversy ended with a judgment that the will was not the last will and testament of the testatrix—the entry of judgment, however, going further and approving and setting forth the contract of settlement between the contracting parties. The inclusion of the latter lends color to the claim that the verdict was directed by reason of the agreement.

In determining, however, the validity of this claim, consideration must be given to the issue before the court. The issue in a will contest in Ohio is provided for in R. C. 2741.04. With respect to this statute, under a predecessor number, the Ohio Supreme Court has stated:

"* * * While the issue prescribed by this section may be made up either by the pleadings, or by an order entered upon the journal of the court, yet whichever mode be adopted, the issue presented for determination must be the same, and the one prescribed and designated by statute, viz: 'Whether the writing produced is the last will or codicil of the testator, or not.' *Dew* v. *Reid,* 52 Ohio St. 519. And upon the trial of this issue, only such evidence as tends either to establish or disprove the validity, as a will, of the paper writing in controversy, is relevant and competent."

There being only one issue, the court and jury should

adjudicate solely upon that issue and no other. A leading writer on the subject of wills has stated:

"The issue in a contest ought not to be obscured by introducing questions as to the title of certain realty, or as to the question of a satisfaction of a legacy, or as to the question of ademption of a devisee by extinction, *or as to the validity of a contract between the devisees, heirs, etc.* * * *." (Emphasis added.) 3 Page, Wills, Section 26.82.

It is, therefore, difficult to perceive the reason the trial judge deemed it necessary to approve the agreement in question and insert the same in the entry of judgment. It does not necessarily follow, however, that by doing so his action with respect to the direction of the verdict was erroneous, or that the legality of such direction rests on a conclusion that the purpose was solely an implementation of the agreement.

It is hornbook law that, in Ohio, trial courts *must* direct a verdict upon motion if the state of evidence is such under the issue in the case, after construing the evidence most strongly in favor of the party against whom the motion is directed, that reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion is directed. See 52 Ohio Jurisprudence 2d 618, Trial, Section 121. The motion to direct the verdict was made obliquely in the conference in chambers, but even if it had not, there is authority for the court to do so sua sponte. See 52 Ohio Jurisprudence 612, Trial, Section 117.

In my view, the verdict was properly directed irrespective of the subjective statements by the trial court for the action taken. I can perceive no alternative. As stated in the sixth paragraph of the syllabus in *J. C. Penny Co., Inc.*, v. *Robison* 128 Ohio St. 626, that it is just as pernicious to submit a case to a jury and permit it to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right. Thus, the claim that the action of the trial court in directing the verdict was contrary to public policy is without merit.

The majority opinion, herein, does not appear to consider the question of the sufficiency of the evidence in considering the directed verdict, but reasons the contract is contrary to public policy and unenforceable and for that reason appellants were prejudiced and the judgment must be reversed. All of the authorities cited to support the conclusion of invalidity of the agreement, except one which is materially different than the case herein, are decisions wherein suits were brought to enforce the contract and relief was denied.

Assuming the correctness of the conclusion of the majority herein that the agreement is unenforceable, a point which I deem it unnecessary to decide, I am not persuaded that it necessarily follows that in this, a will contest action which is obviously not a proceeding to enforce the agreement, that such invalidity requires a reversal of the judgment otherwise properly entered. The holding in *Madden* v. *Shallenberger,* 121 Ohio St. 401, does not, by my view, require such a result, the court holding only that the beneficiaries of wills in which a trust is created may not, by agreement, enlarge their estates contrary to the testator's direction.

Before a reversal can follow, it is necessary that appellants demonstrate in what manner they were prejudiced by the other parties contracting as they did, or in what way the trial court acted or failed to act to safeguard their rights.

Did the formation of the agreement preclude appellants from their day in court? Did the agreement to which they were not parties preclude *them* from a presentation of evidence to sustain the will? The answer, rather obviously, is that it did not. See *Brandenburger* v. *Puller,* 266 Mo. 534, 181 S. W. 1141, wherein the Supreme Court of Missouri approved a contract of settlement between part of the plaintiffs and defendants and held that the non-contracting parties had not been prejudiced since they could and did proceed with the suit.

Confined strictly to the record, it shows only that counsel for appellants entered an appearance and left the

courtroom. That after the negotiations in question, counsel for appellants declined to present any evidence. The brief urges, additionally, that counsel was notified of the agreement, that he was taken by surprise by the course of events, and having relied upon the principal legatee to protect the will, counsel had no alternative except to state they had no other evidence to present.

While it is evident that the trial strategy adopted by appellants was to rely on the principal legatee to defend the will, there is nothing in the record by way of agreement, fiduciary relationship or otherwise that would require the beneficiary to continue to present his evidence after the agreement for appellant's protection. The possibility of an agreement between some or all of the parties in a will contest is always present. Appellants have not pointed out any rule of law that requires any contestant or proponent of a will to present evidence if he chooses other wise. I can only conclude, the execution of the agreement, valid or invalid as it may be, did not prejudice appellants by precluding them from proceeding with the case.

Likewise, I can find no prejudicial action by the court, upon discovery, that appellants had no further evidence to offer. No motion was entered and denied to continue the case to secure the evidence in favor of the will, nor was a motion made and denied for a mistrial.

I conclude that the judgment below was properly entered and that the errors assigned are not well taken, and should be overruled and the judgment affirmed.