Day, J.
 

 During the trial of this case in the Common Pleas Court, it was stipulated that the decedent, J ames Graulty, was an employee of the Ohio State Tax Commission and, as such, was a public employee; that his employer was amenable to the Workmen’s Compensation Act of Ohio; that on the 3rd day of March 1937 the decedent fell in Bloch’s restaurant in the city of Cleveland, sustaining a fracture of the left femur; that he died on April 22,1937, as a result of the injury; and that the decedent was survived by his widow, Bose F. Graulty, who was wholly dependent upon him for support at the time of his death.
 

 As a result of this stipulation, the sole issue in the case presented to the trial court was whéther Mr. Graulty was in the course of his employment at the time he sustained the injury which resulted in his death.
 

 The question before us is whether, in the light of the record, the trial court erred in entering a finding for the defendant on the ground that there was no evidence adduced tending to show that decedent was in the course of his employment at the time he received his injury.
 

 The law is well established in Ohio that a motion for a directed verdict presents to the trial court the question whether the evidence adduced, together with all inferences reasonably deducible therefrom, and construed most strongly in favor of the party against whom the motion is made, is sufficient in law to present a jury question on the issue involved.
 

 “In ruling upon this question, the court cannot make a finding of fact, but must proceed on the assumption that the facts which the evidence tends to prove, and all reasonable inference deductible therefrom, are, for the purpose of the motion, admitted to be true. * * *
 
 *343
 
 The sufficiency of the evidence for submission to the jury is, in Ohio, no longer tested by the presence of ‘any evidence, however slight.’ The decision in the case of
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Go., supra
 
 [127 Ohio St., 469, 189 N. E., 246], abrogated the ‘scintilla rule’ of evidence, and in its place formulated a new rule or test, namely, that if, after giving the evidence a construction most strongly in favor of the party against whom the motion is made, reasonable minds can come to but one conclusion, and that conclusion is adverse to such party, the evidence gives rise to a question of law. When, however, the evidence is such that different minds may reasonably draw different conclusions therefrom, the question which the evidence presents is one of fact and should be submitted to the jury for determination.”
 
 Durbin
 
 v.
 
 Humphrey Co.,
 
 133 Ohio St., 367, at 369, 14 N. E. (2d), 5.
 

 It is disclosed by the record that Bloch’s restaurant, in which decedent was injured, is located in the Engineers building in the city of Cleveland, wherein is also housed an office of the Ohio Tax Commission, of which decedent was an employee. The injury occurred at approximately 9:30 a. m., that is, during office hours.
 

 The record further discloses that but one eyewitness to the accident, Miss Louise E. Mulkin, testified. She was asked:
 

 ‘ ‘ 5. Going, directly to the third day of March, 1937, did you have occasion to be in Bloch’s restaurant? A. Yes, I was there.
 

 “6. Do you recall seeing anything unusual happening there? A. Well, I saw this man fall.
 

 “7. Just describe briefly what you observed about the fall. A. Well, he got up from the chair, his chair, and he started around the elevator man’s chair, and I believe he caught his foot on the chair.
 

 “8. Did he fall to the floor? A. He fell, but he didn’t hit his head.
 

 
 *344
 
 “9. Did he stay on the floor? A. Until they picked him np.
 

 “10. Did you subsequently learn his name? A. When the—
 

 “11. When the investigator called? A. Yes.
 

 “12. You found out that it was James Graulty? A. Yes.”
 

 On cross-examination, the witness was asked:
 

 “17. Do you know whether or not Mr. Graulty had his breakfast that morning? A. Yes, he was eating with Mac, the elevator man; I don’t know his full name.”
 

 On redirect examination the witness was asked:
 

 ‘ ‘ 21. One question. Did you notice what Mr. Graulty had on the table so far as eating his breakfast was concerned? A. I think it was just a cup of coffee; I wouldn’t be sure, but I would say, from memory, that is what he usually had.
 

 “22. Actually what he had on the table, you, of course, wouldn’t know that? A. I wouldn’t know.”
 

 Abe Bloch, the owner of the restaurant, testified that he was in the restaurant at the time decedent fell but that he did not see him until after decedent had fallen.
 

 On cross-examination, Mr. Bloch testified that Mr. Graulty did not have his breakfast at the time he saw him; that he did not see decedent when he first came into the restaurant; and that the first time he saw decedent was when he was on the floor after he had fallen.
 

 On redirect examination, Mr. Bloch testified thus:
 

 “7. Mr. Bloch, you made an affidavit before the Industrial Commission some time ago? A. Yes.
 

 “8. And in that affidavit you made the statement that it was your impression that Mr. Graulty was going to try to tell you something; do you know exactly what it was? A. I don’t know exactly what it was.
 

 “9. He was to come to see you on business; was that your understanding? A. He spoke to me, but I don’t know what it was.
 

 
 *345
 
 “10. Was it your impression that Mr. Graulty was coming to see you on business on the third day of March, 1937; you learned that later ? A. Yes. ”
 

 Frank W. Koral, who was district manager of the sales and excise tax division for the state of Ohio, and supervisor of the decedent, James Graulty, testified that he did not see the accident, hut that when he came into the restaurant after the accident he did not see any food on the table at which decedent was said to have been seated; that decedent’s duties were those of a supervisor in the cigarette tax division; that “his work would not necessarily confine him to the office,” but decedent had authority to leave his office to make inspections; that he could do so without express instructions from him, and that decedent was at the same time also required to check into violations of other tax laws as well.
 

 Mr. Koral further testified that decedent “covered what we call the downtown district; that is, the district in the vicinity of the office,” and that Bloch’s restaurant was in that district, being in the immediate vicinity of the office.
 

 Upon cross-examination, Mr. Koral testified that he, himself, had sometimes gone into Bloch’s restaurant during office hours for breakfast, but that the practice of employees eating in the restaurant during office hours was not approved.
 

 During the course of the trial there was introduced in evidence decedent’s application for payment of compensation. That application consisted of three parts, the first being the application • by the employee, the second being the physician’s report, and the third being the report of the employer.
 

 In the employee’s part of the application, which was signed by decedent, appeared the following:
 

 “12. Accident happened in following manner: Describe fully: While going through the above res
 
 *346
 
 taurant to examine cigarettes, I accidentally stumbled on the leg of a chair that was protruding in the aisle.”
 

 In the physician’s report appeared the following:
 

 “State, in patient’s own words, how accident occurred. While going through restaurant to examine cigarettes, I accidentaly stumbled on a leg of a chair that was protruding in the aisle.”
 

 In other words, -the physician’s report repeated almost the exact words of the patient.
 

 In the employer’s report, appeared the following:
 

 “11. If accident was not seen by employer’s agent or representative, state when it was first reported: 3/5/37. By whom reported? H. F. Ridenour. -To whom reported? Undersigned. Give the exact description of accident and injury as reported at that time: Accidentally stumbled against chair, fell and fractured left femur.
 

 “12. Was any investigation made by employer’s agent or representative of the reported accident? Yes. (a) If investigation revealed that accident or injury was not correctly described by applicant, so state and give details; correctly described.
 
 * * *
 

 “[Signed] Frank W. Koral.”
 

 To be entitled to an allowance of the death award as provided by the Workmen’s Compensation Act of Ohio, it was incumbent upon the widow to prove that her deceased husband, James Graulty, received his injury in the course of his employment. See Section 1465-68, General Code. Has she borne that burden of proof?
 

 Treating the evidence as true, and giving to it and to all inferences reasonably deducible therefrom a construction most favorable to plaintiff, it cannot fairly be said that she has borne that burden of proof. The evidence, as disclosed by the record, is not such as to warrant a trial court in saying that different minds could reasonably come to different conclusions with respect to the question whether decedent received his
 
 *347
 
 injury in the course of his employment. There was no testimony whatever from which it could reasonably be inferred that decedent was at the restaurant on business at the time he was injured. Decedent’s statement, contained in his application for compensation, which was repeated in the physician’s report, that he received his injury while going through the restaurant “to examine cigarettes,” does not have any probative weight or value since it was made five days after the accident and is not a part of the
 
 res gestae.
 
 See
 
 Reinhart
 
 v.
 
 Industrial Commission,
 
 137 Ohio St., 159, 28 N. E. (2d), 498. The foregoing statement is but a self-serving declaration which the trial court had a right to disregard. The record discloses the introduction of positive testimony to the effect that the restaurant did not engage in the sale of cigarettes. Furthermore, there is no competent evidence in the record to the effect that decedent was investigating whether cigarettes were being sold in the Bloch restaurant.
 

 Mr. Koral’s statement, in the employer’s report, that the description of the accident was correct is inadmissible because, on-his examination as a witness in the case, he was shown to have no actual knowledge of the accident, since he did not see it occur. That statement was based on hearsay.
 

 Mr. Koral’s statement that the restaurant was within the district in which the decedent might have performed his duties at the time of the accident has likewise no probative weight or value, for to infer from that testimony that decedent was so engaged would be to indulge in mere speculation.
 

 The testimony of Mr. Bloch to the effect that he was under the impression that the decedent was coming into his restaurant on business on the date of the accident has no probative value, since it is mere conjecture.
 

 In a workmen’s compensation case, tried on appeal before a court without the intervention of a jury, it is
 
 *348
 
 not error for the trial court to enter judgment for the defendant at the close’of the plaintiff’s evidence if the facts established and every inference reasonably deducible therefrom, construed most strongly in favor of plaintiff, do not tend to show that the employee received his injuries in the course of his employment.
 

 It is our opinion, and we accordingly hold, that in the light of the record, the trial court did not err in entering judgment for the defendant.
 

 Judgment of Court of Appeals reversed and that of the Common Pleas Court affirmed.
 

 .
 
 Weygandt, C. J., Zimmerman, Williams, Matthias, Hart and Turner, JJ., concur.