TRUCHESS ET AL., APPELLANTS, *v.* BRAND, EXRX., APPELLEE.

(No. 4744—Decided December 21, 1953.)

*Mr. W. E. Orthwein,* for appellants.
*Mr. John W. Bebout* and *Mr. Joseph A. McCarthy,* for appellees.

DEEDS, J. This appeal on questions of law is from a judgment of the Court of Common Pleas entered upon the verdict of a jury, directed by the court at the close of the evidence adduced by the plaintiffs-appellants.

The defendant-appellee, Goldie J. Brand, is the executrix of the estate and widow of Fred W. Brand, deceased. Ocie M. Truchess, Ruth C. Thorpe and Floyd F. Brand, plaintiffs-appellants, are the adult daughter and adult sons, respectively, of the decedent, who commenced the proceedings for the purpose of contesting the alleged will of the decedent.

The plaintiffs-appellants and defendant-appellee will

be referred to herein as plaintiffs and defendant, respectively, as the parties appeared in the trial court.

On the trial of the case in the Court of Common Pleas, the defendant, pursuant to Section 12083, General Code (Section 2741.05, Revised Code) introduced as evidence the will of the decedent and a certified copy of the order of probate of same, following which the evidence on behalf of the plaintiffs was received.

In view of the conclusion which this court has reached, that the Court of Common Pleas erred in directing the jury to return a verdict for the defendant, we deem it appropriate to consider here the evidence contained in the record most favorable to the plaintiff, as we are required to do and which has led us to the conclusion that the trial court should have declined to direct a verdict in favor of the defendant.

The evidence discloses that the principal asset in the estate involved in the contest is a residence property located at 3135 Glenwood Avenue, Toledo, Ohio, valued at $8,500, which was the property of the decedent at the time of his marriage to the defendant on July 11, 1939, although some payments were made to clear an encumbrance against same following the marriage; that the decedent and his children, the plaintiffs, were on natural congenial terms and that they visited their father frequently, except when they were requested to remain away from his home by the defendant on account of the physical and nervous condition of the decedent, on occasions during about the last three years of his life.

Concerning the mental and physical condition of the decedent, as shown by the evidence, for some time prior to, at the time of and following the execution of his will on January 22, 1951, at which time he was 79 years of age, it is disclosed that, in March 1945,

he suffered a paralytic stroke which left his right hand and arm paralyzed, crooked and drawn, and fingers stiffened; that his speech was affected; that his throat was so affected that he could not eat solid food; that he never fully recovered from the stroke, although he returned to work at the Willys-Overland plant for a few months or about a year; that he suffered a more severe stroke in the fall of the year 1947, after which he never returned to work; that the second stroke also affected his right arm and hand, and his face and legs; that his throat and tongue were so affected that it was difficult for him to talk at all; and that he was rendered practically bedfast for the remainder of his life, unable to get about except with the help of someone.

It appears further from the evidence introduced by the plaintiffs that, following the second stroke in 1947 until the time of his death, the decedent, on many occasions, suffered from hallucinations; that the defendant stated to witnesses on many occasions during this same period of time that they should pay no attention to the decedent, that he did not know what he was talking about; that the decedent said the defendant was abusive to him and that he was afraid of her and that on one occasion the defendant struck and knocked the decedent to the floor and it was necessary for the defendant to call the plaintiffs who came to assist in getting the decedent onto his bed; and that decedent told witnesses that he was not getting enough food to eat and was hungry.

It appears further from the evidence in the record that on March 16, 1949, the decedent, while confined to bed, executed a deed by affixing an x-mark to same, due to his inability to write his signature, transferring the real estate mentioned to the defendant and that thereafter, sometime during the year 1950, the de-

cedent learned from a tax bill which came to the residence that the property was no longer in his name, whereupon he demanded that the property be retransferred to him, which was done by deed executed by the defendant on October 7, 1950; that decedent stated that he did not know or remember that he had transferred the property to the defendant; and that he frequently talked and mumbled unintelligibly to himself.

While the foregoing statement is not intended to comprehend all the evidence appearing in the record concerning the mental and physical condition of the decedent relative to his capacity to make a will, it is sufficient in our view to indicate that the motion of the defendant for a directed verdict at the close of the evidence offered by the plaintiffs, under the rules of law established by the Supreme Court, should have been overruled.

Section 2741.05, Revised Code, provides as follows:

"On the trial of the issue made up as provided in Section 2741.04 of the Revised Code, the order of probate is prima facie evidence of the attestation, execution, and validity of the will or codicil."

The burden rested upon the plaintiffs to produce credible evidence of a substantial character which tended to overcome the "prima facie evidence of the due attestation, execution, and validity of the will" made by the order of probate.

The rule of law applicable at the close of the evidence offered by the plaintiffs, where a motion for a directed verdict is made by the defendant, is stated by the Supreme Court in *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, paragraphs 3 and 4 of the syllabus being as follows:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have

the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

From the opinion of the court, a statement considered pertinent to the record before us appears at pages 481 and 482:

"To permit the court to direct a verdict in every case where he would set aside a contrary verdict would, in our opinion, be an unwarranted invasion of the jury's province. That the weight of the evidence is at least primarily a question for the jury has long been recognized in Ohio both by the courts and by the Legislature.

"But to say that the court must send the case to the jury whenever there is any evidence, no matter how slight, which tends to support a party's claim, is, in extreme cases, to permit the jury to play with shadowy and elusive inferences which the logical mind rejects. Before the judge is required to send the case to the jury, there should be in evidence something substantial from which a reasonable mind can draw a logical deduction. If reasonable minds may draw different inferences, or reach different conclusions, a jury question is presented. But, if reasonable minds can reach only one conclusion, the jury should not be allowed to speculate upon the matter. To do so is to allow them the opportunity of returning a wholly unreasonable verdict.

"There is a distinct and definite place in our Anglo-American scheme of trial procedure for the exercise of the jury's function. The 'common touch' implicit in the layman's nontechnical approach to the decision of cases has been jealously guarded throughout our judicial history. But definite boundaries of the jury's province have always been recognized. The judge is to see that they are not transgressed.

"Our present holding is but the corollary of a doctrine long accepted. We permit the judge to say that there is no evidence to support a verdict. May he not equally be trusted to say whether there is any substantial evidence from which a rational conclusion may be drawn?

"In our opinion, therefore, the question whether the case must be submitted to the jury should not be tested by asking whether there is any evidence, however slight, tending to support each material issue; it should be tested by asking whether upon the evidence adduced reasonable persons might reasonably reach different conclusions. Before a verdict may be directed against a party, the evidence must be given the most favorable interpretation in his favor. If, after such interpretation, the court finds that upon any material issue only an adverse conclusion can reasonably be drawn, it should direct a verdict against him."

In the much more recent case of *Graulty* v. *Industrial Commission,* 137 Ohio St., 341, 30 N. E. (2d), 337, the Supreme Court of the state has stated clearly the rule controlling the decision of this court on this review, at pages 342 and 343:

"The law is well established in Ohio that a motion for a directed verdict presents to the trial court the question whether the evidence adduced, together with all inferences reasonably deducible therefrom, and

construed most strongly in favor of the party against whom the motion is made, is sufficient in law to present a jury question on the issue involved.

" 'In ruling upon this question, the court cannot make a finding of fact, but must proceed on the assumption that the facts which the evidence tends to prove, and all reasonable inferences deductible therefrom, are, for the purpose of the motion, admitted to be true. * * * The sufficiency of the evidence for submission to the jury is, in Ohio, no longer tested by the presence of "any evidence, however slight." The decision in the case of *Hamden Lodge* v. *Ohio Fuel Gas Co.*, [127 Ohio St., 469, 189 N. E., 246], abrogated the "scintilla rule" of evidence, and in its place formulated a new rule or test, namely, that if, after giving the evidence a construction most strongly in favor of the party against whom the motion is made, reasonable minds can come to but one conclusion, and that conclusion is adverse to such party, the evidence gives rise to a question of law. When, however, the evidence is such that different minds may reasonably draw different conclusions therefrom, the question which the evidence presents is one of fact and should be submitted to the jury for determination.' *Durbin* v. *Humphrey Co.*, 133 Ohio St., 367, at 369, 14 N. E. (2d), 5.''

On the trial of the case in the Court of Common Pleas, objections were made by the defendant to certain testimony concerning statements made by the decedent, upon which rulings were made by the court and upon which rulings we do not consider it necessary to pass, in view of our conclusion on this review. Nevertheless, on a retrial, we believe the rules applicable to the questions referred to are found stated in 41 Ohio Jurisprudence, 493 *et seq.,* Wills, Sections 352 and 353, as follows:

Section 352. "As to Testamentary Capacity. The authorities agree that the declarations of a decedent, oral or written, whether made at, before, or after the execution of his alleged will, are admissible for the purpose of showing his mental condition, enabling the court or jury to determine his testamentary capacity. Any declarations of a testator which tend to show the condition of his mind at the time he made his will are admissible to determine his mental capacity at that date. So, statements made by a testator relative to his intentions of disposing of his property are admissible, not for the purpose of contradicting the contents of his written will, but to show his state of mind at the time that he executed such will. Oral declarations of a testatrix as to her testamentary intentions, made during her last sickness, and shortly after the execution of her will, are competent as tending to show the condition of her mind at the time the will was executed."

Section 353. "As to Undue Influence. The general rule established by the overwhelming weight of authority, and followed by the Ohio courts, is that declarations of the testator not made contemporaneously with the execution of the will or so near thereto as to constitute a part of the res gestae are not admissible as substantive proof of the fact of undue influence. But where in a will contest, in answer to interrogatories, the jury finds that undue influence has not been exercised upon the testator, but that he lacked testamentary capacity, a charge by the court that might have been interpreted by the jury to mean that declarations of the testator at a time shortly after the execution of the will were competent to prove an intention other than that expressed in the will has been held not prejudicial error, requiring a disturbance of the verdict.

"It is equally well established in Ohio, and generally, that declarations of a testator made before and after the making of a will, if made near such time, are admissible to prove the state of mind of the testator. If the declarations tend to prove both the fact of undue influence and the state of mind of the testator, the court may admit the testimony and instruct the jury that it can consider the declarations so far as they tend to prove the state of mind of the testator. But where no request is made of the court to limit the purpose for which such evidence is admitted, its admission is not prejudicial error. Testimony of witnesses as to statements made by the testator is admissible over general objection in the absence of a request for the limitation of the jury's consideration thereof to the purpose of showing the testator's state of mind."

It is the conclusion of this court that there was credible evidence of a substantial character requiring the trial court to overrule the motion of the defendant for a directed verdict at the close of the evidence offered by plaintiffs. It therefore follows that the judgment of the Court of Common Pleas is reversed and the cause is remanded to that court for a new trial.

*Judgment reversed.*

Fess and Conn, JJ., concur.