[Cite as *Gustafson v. Miller*, 2015-Ohio-5515.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FRED GUSTAFSON, AS EXECUTOR OF THE ESTATE OF HELEN GUSTAFSON, DECEASED | JUDGES: Hon. William B. Hoffman, P.J. Hon. Patricia A. Delaney, J. Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | Case No. 15-CA-00008 |
| -vs- | |
| JOYCE MILLER, ET AL. | O P I N I O N |
| Defendants-Appellees | |

CHARACTER OF PROCEEDING: Appeal from the Perry County Court of Common Pleas, Probate Division, Case No. 20121101-1

JUDGMENT: Affirmed in part; Reversed in part and Remanded

DATE OF JUDGMENT ENTRY: December 30, 2015

APPEARANCES:

For Plaintiff-Appellant

SCOTT A. CAMPBELL
JERRY VANDE WERKEN
STEPHANIE M. CHMIEL
Thompson Hine LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215

For Defendants-Appellees

MICHAEL L. CLOSE
MARK A. GLUMAC
CYNTHIA B. ROBERTS
DALE D. COOK
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1} Plaintiff-appellant Fred Gustafson as Executor of the Estate of Helen Gustafson, deceased ("Gustafson") appeals the March 4, 2015 Judgment Entry/Order entered by the Perry County Court of Common Pleas, Probate Division, which granted summary judgment in favor of defendants-appellees Joyce Miller, Gus Transport, Inc., and Pine Lakes II, LLC.

STATEMENT OF THE CASE AND FACTS

{¶2} Helen Gustafson ("Decedent") passed away on May 10, 2012, survived by three adult children, Fred Gustafson[1], Joyce Miller ("Miller"), and David Gustafson. Decedent's husband and the parties' father passed away in 1994. Fred Gustafson was appointed Executor of Decedent's estate ("the Estate"). The Estate was filed in Perry County Probate Court on July 3, 2012.

{¶3} On February 14, 2014, Gustafson filed a Complaint against Appellees in the Perry County Court of Common Pleas, Probate Division, alleging concealment through fraud and undue influence. The Complaint sought declaratory and injunctive relief as well as rescission and an accounting. The Complaint also sought recovery of five estate assets or the proceeds thereof: real property located at 11350 New Salem Road, Thornville, Ohio ("the Homestead"); Gus Transport and the FedEx trucking routes; funds from Decedent's bank accounts totaling $201,600.00; Shareholder Loan in the amount of $270,032.00 from Decedent to Gus Transport; and an Allstate Insurance check in the amount of $15,000.

---

[1] We shall use "Fred Gustafon" when referring to him in his individual capacity.

{¶4} Upon completion of discovery, Appellees filed a motion for summary judgment on February 2, 105. Gustafson filed his memorandum in opposition on March 4, 2015.

{¶5} A review of the record reveals the following:

{¶6} In 1985, after years of working as an independent contractor for a number of trucking companies, Miller began her own trucking company, Pine Trails Trucking. Subsequently, Miller convinced her father to start his own trucking company, Little Pine Trucking, which ultimately became Gus Transport.[2] Both Pine Trails Trucking and Gus Transport had routes with FedEx. Miller handled the financial affairs of her father's business from the company's inception. Miller made all the arrangements with FedEx following her father's death to continue doing business with Decedent as the owner of Gus Transport.

{¶7} Decedent and Miller executed an operating agreement for Helen Gustafson LLC, which became effective on July 18, 2000. Miller was named the manager of the LLC. Helen Gustafson, LLC, was the company through which Decedent's trucking business ran. Years later, although the reason for doing so is not clear from the record, Decedent executed an operating agreement for Helen Gustafson II, LLC, which became effective November 7, 2005. Decedent was the only member and the manager of the LLC. Helen Gustafson II, LLC replaced Helen Gustafson, LLC.

{¶8} On January 8, 2004, Decedent executed a Durable Power of Attorney, naming Miller as her attorney in fact. Sometime in 2004, Decedent transferred her interest

---

[2] Gus Transport, Inc. was incorporated on September 3, 2010, due to changes in FedEx business practices. We shall refer to Little Pine Trucking as Gus Transport for the remainder of this Opinion.

in two of her four FedEx truck routes to Miller.  According to Miller, Decedent did this in appreciation for Miller's taking care of the business.

**{¶9}**  Miller executed an operating agreement for Pine Lake II, LLC, which became effective on November 7, 2005.  Miller was the only member and the manager of Pine Lake II.  On June 18, 2006, Decedent as the trustee of the Helen Gustafson Living Trust executed a quit claim deed conveying the Homestead from the Helen Gustafson Living Trust to Pine Lake II.  On June 21, 2006, Decedent recorded a Statement of Reason for Exemption of Real Property and the Quit Claim Deed with the Perry County Recorder's Office.  In support of the Statement of Reason for Exemption, Decedent attached her affidavit.  Therein, Decedent averred she formed Pine Lake II, LLC, of which she was the sole member, and was conveying the property from her Trust to her LLC. The transfer was recorded on June 29, 2006.  Decedent conveyed the property in order to protect the Homestead from a prejudgment attachment by the State of Ohio pending an action to recover premiums paid by the Bureau of Worker's Compensation. Decedent continued to live at the Homestead until her death.  All taxes and expenses related to the Homestead were paid out of Decedent's bank accounts.

**{¶10}** In January, 2009, Miller and Decedent entered into a five year lease agreement whereby Decedent leased two tractor trailers from Miller.  According to Miller, Decedent needed to purchase two new tractor trailers, but could not obtain a loan to do so.  Miller agreed to purchase the vehicles, which Decedent leased at a monthly rate equal to the monthly payments on the vehicles.

**{¶11}** The tax return for Gus Transport from the 2011 tax year reveals a $272,032.00 shareholder loan from Decedent.  The date of the original loan is unknown.

At the end of 2012, the amount owing to Decedent on the loan was $201,640.00. At the end of 2013, the amount dropped to $51,478.00. No payments on the loan were made to the Estate. Miller claimed no knowledge of the loan, but subsequently testified no payments on the loan were made to Decedent before she died.

{¶12} On January 2, 2012, Miller and Pine Trails Transportation, Inc., her trucking business, entered into a stock purchase agreement with Simple Transport, Inc. and Chad Turner, for the purchase price of $2.2 million.

{¶13} Shortly before Decedent's death, it was discovered certain jewelry belonging to Decedent was missing. According to Miller, Decedent intended to give the jewelry to Miller's daughter, Dawn. On May 11, 2012, Miller, on behalf of Decedent, filed a claim for the missing jewelry with Allstate, Decedent's homeowner's insurer. Allstate issued a check to Decedent on May 21, 2012, in the amount of $15,000, as payment of the claim. Miller cashed the check, endorsing it "Joyce Miller, Executor", on June 2, 2012. Miller testified she tendered the money to Gustafson, but he insisted the money belonged to Dawn and Miller should give the money to her daughter.

{¶14} As stated, supra, Decedent passed away on May 10, 2012. Miller testified she learned she was the owner of the Homestead shortly before Decedent's death, but was unable to discuss the situation with Decedent due to Decedent's physical and mental state at the end of her life. Fred Gustafson, Miller, and David Gustafson met with Attorney David Lowe on May 17, and June 6, 2012. The three agreed Attorney Lowe could represent each of them. At the second meeting, the siblings signed a document captioned "GUS TRANSPORT, INC. – Action by Consent of Family Members", agreeing Miller was the sole and only shareholder of Gus Transport. Miller gave up her right to contest

Decedent's Will. Also at the second meeting, Miller gave Fred Gustafson an option agreement to purchase the Homestead from Pine Lake II, LLC for $150,000. Fred Gustafson was given six months to exercise the option. Fred Gustafson never exercised the option.

{¶15} On November 20, 2013, Miller executed an Agreement for Purchase of Real Estate with an individual by the name of George Cenky for the sale of the Homestead for the sum of $250,000.

{¶16} Via Judgment Entry/Order issued March 4, 2015, the trial court granted summary judgment in favor of Miller on all of Gustafson's claims. The trial court found the allegations set forth in the Complaint were not supported by the evidence. The trial court further found no evidence of fraud or undue influence based upon the discovery documents and exhibits presented. With respect to Gus Transport, the trial court specifically found the parties entered into a consent agreement in which they each agreed Miller would be the sole shareholder of the company. The trial court concluded there was no evidence Miller fraudulently obtained Gus Transport. The trial court also noted the parties agreed there would be no litigation concerning Gus Transport. With respect to the transfers of money, the trial court explicitly denied the allegations the money was transferred illegally. The trial court remarked Decedent appeared to be competent and had Miller named on the bank accounts as a joint owner. The trial court added from the evidence it appeared Decedent wanted it known she permitted Miller to have access to the bank accounts.

{¶17} It is from this judgment entry Gustafson appeals, raising the following assignments of error:

**{¶18}** "I. THE TRIAL COURT ERRED IN HOLDING THAT EVIDENCE OF FRAUD OR UNDUE INFLUENCE IS A NECESSARY ELEMENT AS TO ALL OF APPELLANT'S CLAIMS, INCLUDING HIS STATUTORY CONCEALMENT CLAIM FOR PROPERTY TAKEN POST-DEATH FROM THE ESTATE.

**{¶19}** "II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES SUMMARY JUDGMENT."

I

**{¶20}** In the first assignment of error, Gustafson maintains the trial court erred in holding evidence of fraud and undue influence were necessary elements of all of the claims including the statutory claim for concealment relative to property taken from the Estate post-death. We agree.

**{¶21}** In its Judgment Entry/Order filed March 4, 2015, the trial court specifically stated it "finds no evidence of fraud or undue influence based upon the documents and exhibits provided to the court." *Id.* at 2. The trial court proceeded to dismiss all of Gustafson's claims, including his claim for concealment pursuant to R.C. 2109.50.

**{¶22}** Pursuant to R.C. 2109.50, an executor of an estate may file a complaint in the probate court "against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys * * * of the estate[.]" "When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine, by the verdict of a jury if either party requires it or without if not required, whether the person accused is *guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys,* chattels, or choses in action of the trust estate. R.C. 2109.52 (Emphasis added).

**{¶23}** R.C. 2109.52 does not require the complaining party to establish fraud or undue influence. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Wozniak v. Wozniak* (1993)*,* 90 Ohio App.3d 400, 407, 629 N.E.2d 500.

**{¶24}** We find the trial court erred in dismissing Gustafson's claim for concealment based upon its finding Gustafson failed to prove fraud or undue influence.

**{¶25}** Gustafson's first assignment of error is sustained.

II

**{¶26}** In his second assignment of error, Gustafson contends the trial court erred in granting summary judgment in favor of Miller.

**{¶27}** Civ. R. 56 states in pertinent part:

**{¶28}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶29}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999).

**{¶30}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

**{¶31}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶32}** Gustafson challenges the trial court's decision with respect to the five assets of the Estate or the proceeds thereof which were the basis of the Complaint: the Homestead; Gus Transport and the FedEx trucking routes; funds from Decedent's bank accounts totaling $201,600.00; the Shareholder Loan in the amount of $270,032.00 from Decedent to Gus Transport; and an Allstate Insurance check in the amount of $15,000. We shall address each in turn.

THE HOMESTEAD

**{¶33}** Gustafson contends the trial court erred in granting summary judgment in favor of Miller on the issue of the ownership of the Homestead. Specifically, Gustafson maintains the evidence established at the time of her death Decedent was the owner of Pine Lake II and the Homestead. We disagree.

**{¶34}** We find the evidence establishes Miller was the owner of Pine Lake II. Exhibit 107 attached to the Deposition of Attorney Christopher Minnillo is the Operating Agreement of Pine Lake II, LLC. The sole member and manager of Pine Lakes II is Miller. Upon the recording of the quit claim deed on June 29, 2006, which conveyed the property from Decedent's Trust to Pine Lake II, Miller became the owner of the Homestead. The fact Decedent provided misinformation in her affidavit in support of the Statement of Reason for Exemption does not change the legal ownership of the Homestead.

**{¶35}** Accordingly, we find the trial court did not err in granting summary judgment in favor of Miller on the issue of the ownership of the Homestead.

GUS TRANSPORT, INC.

**{¶36}** Gustafson argues the trial court erred in granting summary judgment in favor of Miller on the issue of the ownership of Gus Transport. We disagree.

{¶37} At the time of her death, Decedent was the sole owner of Gus Transport. Fred Gustafson, Miller, and David Gustafson met with Attorney Lowe on two occasions following Decedent's death. During these meetings, the siblings specifically discussed Gus Transport and came to an agreement which Attorney Lowe reduced to writing, to wit: the "GUS TRANSPORT, INC. – Action by Consent of Family Members" document. Pursuant to this consent agreement, Miller was named the sole and only shareholder of Gus Transport. Fred Gustafson, Miller, and David Gustafson executed the consent agreement. We find there is no evidence Miller fraudulently obtained Gus Transport. Fred Gustafson signed the consent agreement by his own volition. Beneficiaries under a will may by agreement between and amongst themselves, make a disposition of property otherwise than as directed by the testator. See, *Taylor v. Connell* (1971), 26 Ohio App. 2d 253, 257; *Chisholm v. Chisholm* (1950) 94 N.E. 2d 705, 706.

{¶38} Further, despite Gustafson's claim Attorney Lowe did not advise the siblings of their potential claims against one another, Attorney Lowe had each sibling sign a Consent to Multiple Representation letter in which he advised the siblings to carefully consider the variety of issues which potentially could arise from the multiple representation.

{¶39} Accordingly, we find the trial court did not err in granting summary judgment in favor of Miller on the issue of the ownership of Gus Transport.

STOLEN CASH

{¶40} Gustafson further asserts the trial court erred in granting summary judgment in favor of Miller on the issue of the funds Miller transferred from Decedent's bank accounts to her own bank accounts. We disagree.

{¶41} In 2004, eight years before her death, Decedent executed a power of attorney, granting Miller the authority to act on her behalf. This document gave Miller broad and extensive powers to manage Decedent's affairs. Decedent also had Miller place her name on joint bank accounts. The evidence presented supports the trial court's determination Decedent wanted Miller to have access to the monies in her bank accounts.

{¶42} Accordingly, we find the trial court did not err in granting summary judgment in favor of Miller on the issue of the money transfers.

## ALLSTATE CHECK

{¶43} On May 11, 2012, the day after Decedent's death, Miller on behalf of Decedent filed a claim for missing jewelry with Allstate. Allstate issued a check to Decedent on May 21, 2012, in the amount of $15,000, as payment of the claim. Miller deposited the check, endorsing it "Joyce Miller, Executor", on June 2, 2012. Miller testified a bank representative informed her to endorse the check as she did.

{¶44} We find Miller's endorsement of the check was improper. Miller's power of attorney terminated upon Decedent's death; therefore, she had no authority to cash the Allstate check. The Allstate check was an asset of the Estate and a genuine issue of material fact exists as to whether Miller improperly withheld that asset.

{¶45} We find the trial court failed to address this asset in its judgment entry granting summary judgment in favor of Miller. Accordingly, we remand the matter to the trial court to rule on this issue.

## SHAREHOLDER LOAN

{¶46} Sometime prior to 2011, Decedent made a shareholder loan to Gus Transport in excess of $270,000.00. The date of the original loan is unknown. At the end

of 2012, the amount owing to Decedent on the loan was $201,640.00. At the end of 2013, the amount dropped to $51,478.00. No payments on the loan were made to the Estate. Miller claimed no knowledge of the loan, but did testify no payments on the loan were made to Decedent before she died.

**{¶47}** We find a genuine issue of material fact exists as to whether Miller or Gus Transport did or did not make the shareholder loan payments to the Estate. Because Miller is the sole shareholder of Gus Transport and unable to explain why the amount due on the loan dropped despite no payments being made to Decedent or the Estate, we find there are sufficient disputed facts to prevent summary judgment in favor of Miller on this issue.

**{¶48}** Based upon the foregoing, we vacate the trial court's decision with respect to the shareholder loan, and remand the matter for further proceedings.

## CROSS-ASSIGNMENT OF ERROR

### I

**{¶49}** Within her Answer Brief, Miller sets forth a cross-assignment of error which was "asserted pursuant to Ohio Revised Code Sec. 2505.22 in order to prevent reversal". Via Judgment Entry filed October 2, 2015, this Court determined the cross-assignment of error was really an additional argument presented in opposition to Gustafson's appeal, and Miller was not required to file a Notice of Cross-Appeal.

**{¶50}** Miller argues the trial court erred in failing to find Gustafson's claims were barred by the applicable statute of limitations. Miller submits Gustafson's claims sound in conversion and fraud; therefore, are governed by the four year statute of limitations set forth in R.C. 2305.09.

**{¶51}** In his Complaint, Gustafson alleged Miller was wrongfully in possession of assets of Decedent's Estate. The fact Gustafson asserted Miller obtained the assets through fraud or conversion does not change the true essence of the claims. Gustafson claimed the assets were owned by Decedent at her death and rightfully belonged to the Estate.

**{¶52}** Accordingly, we do not find Gustafson's claims barred by the four year statute of limitations for conversion and fraud.

**{¶53}** The judgment of the Perry County Court of Common Pleas, Probate Division, is affirmed in part and reversed in part and the matter remanded for further proceedings consistent with this Opinion and the law.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur